**Ellis Leroy CLARK and Jean C. Clark, Plaintiffs,**

v.

**SOLOMON NAVIGATION, LTD., and MV Oceanus Campaigner, her Engines, Tackle and Appurtenances, etc., Defendants.**

**No. 84 Civ. 2155 (CBM).**

United States District Court, S.D. New York.

March 31, 1986.

---

Kreindler & Kreindler, by Paul S. Edelman, New York City, for plaintiffs.

Cichanowicz, Callan, Carcich & Keane, by David J. Van Oss, New York City, for defendants.

## OPINION

MOTLEY, Chief Judge.

Plaintiff Ellis Leroy Clark, an independent river pilot on the Columbia River near Portland, Oregon, has brought this action for injuries sustained while disembarking from the M/V Oceanus Campaigner onto a barge floating alongside. Plaintiff claims that his injuries were caused by a defectively arranged Jacob's or pilot's ladder which unfurled suddenly, throwing him onto the deck of the tug some fifteen feet below. Plaintiff sets forth causes of action sounding in negligence and in the general maritime law of seaworthiness.

Prior to trial, at a conference before the court, it became clear that a key legal dispute still remained in this case. This is whether plaintiff was in fact a person to whom the general maritime duty of seaworthiness was owed. Defendant argued essentially that because of plaintiff's status as a non-employee of the vessel, and because of his putative coverage by the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), Clark is not entitled to assert a cause of action for unseaworthiness. Plaintiff, however, countered that the LHWCA, along with its removal of the traditional unseaworthiness claim from covered employees, does not apply to river pilots such as Clark and that, accordingly, he could sue under the seaworthiness doctrine.

The court requested supplemental briefs and advised the parties it would decide this issue on submission, treating it as a motion to dismiss plaintiff's cause of action for unseaworthiness. After careful consideration of this troublesome problem, the court concludes, for the reasons that follow, that as river pilot of defendant vessel, plaintiff was a member of the class of persons to whom the general maritime duty of seaworthiness is owed. Accordingly, he is entitled to press his cause of action against defendant for breach of its duty of seaworthiness.

## FACTS

There is no dispute in this case that at the time of his accident plaintiff was in the service of defendant as a ship's pilot. There is also no dispute that the term "pilot" signifies "a person taken on board at a particular place for the purposes of conducting a ship through a river, road, or channel or from or into port." *Encyclopedia Britannica* (11th Edition). It is further agreed that as a river pilot to defendant for purposes of navigating the vessel along the Columbia River, plaintiff was not an employee of defendant at the time of his accident. Instead, he was an employee of his own company, Leroy Clark, Inc., which in turn was a member of a local cooperative of independent contractors, The Columbia River Pilots Association, which provides pilotage services to vessels travelling the river. In short, it is agreed that plaintiff's relation to defendant vessel and vessel owner was that of an independent contractor taken on board as a pilot to perform traditional navigational duties at the wheel of the ship.[1]

---

1. Disputed factual issues as to a plaintiff's status as a seaman, at least under the Jones Act, are of course to be decided by the jury. *Harney v. William M. Moore Bldg. Corp.*, 359 F.2d 649, 654–55 (2d Cir.1966). Where, as here, however, plaintiff is not asserting a statutory claim but a claim under the general maritime law, the situation is somewhat more complicated. Because plaintiff is asserting his maritime claim under the diversity jurisdiction of the federal court, 28

## DISCUSSION

The general maritime duty of seaworthiness obligates a vessel owner "to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). The doctrine of seaworthiness has undergone "a most extraordinary expansion" since the 1940's, *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 497, 91 S.Ct. 514, 516, 27 L.Ed.2d 562 (1971), both with respect to the conditions for which a vessel owner may be held liable and with respect to the class of persons who may invoke its guarantee.

■ As a duty to furnish "a vessel and appurtenances fit for their intended use," the doctrine of seaworthiness imposes a very strict standard of liability. While not quite a standard of strict liability, the warranty of seaworthiness is completely divorced from concepts of negligence. *Mitchell v. Trawler Racer*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). The warranty of seaworthiness has expanded over the years to apply to conditions that are temporary as well as those that pertain to permanent features of the vessel. *Id.* The condition of unseaworthiness includes as well such circumstances as defective gear or appurtenances, an unfit or insufficient crew, or the improper methods utilized by a vessel in loading or stowing cargo, or in handling equipment. See *Usner v. Luckenbach Overseas Corp.* 400 U.S. 494, 499, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971). Because seaworthiness refers to a *condition*, however, and despite the fact that it imposes liability even where there has been no negligence with regard to the unseaworthy condition challenged, the doctrine, though generous, will not give

U.S.C. Section 1332, as well as under its separate admiralty jurisdiction, 28 U.S.C. Section 1333, he is entitled to a jury. See 28 U.S.C. Sections 1332, 1333 (containing clause that saves the alternate common law diversity forum for maritime suitors). *Complaint of Berkley Curtis Bay Co.,* 569 F.Supp. 1491, 1493 (S.D.N.Y. 1983).

Were this court's jurisdiction of plaintiff's admiralty claim supplied solely by the admiralty jurisdiction of the federal courts under Section 1333, the admiralty claim would be tried to the court and plaintiff would not be entitled to a jury trial. Id., citing *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 369, 79 S.Ct. 468, 478, 3 L.Ed.2d 368 (1959). In a situation like that of the present case where there is both admiralty and federal question or diversity jurisdiction, there is no right to a *non*-jury trial of the admiralty claim, however. See *Fitzgerald v. United States Lines,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) (reasoning that while the Seventh Amendment does not require jury trials in admiralty, neither does it forbid them). This is because where the non-jury admiralty tradition and plaintiff's jury right conflict, the jury right must prevail. *Complaint of Berkely Curtis Bay Co.,* supra at 1494.

Since the right to a jury determination of disputed issues of fact in a general admiralty claim jurisdictionally based on 28 U.S.C. Section 1333, where there is also diversity jurisdiction, thus appears to be at plaintiff's election, the applicability of the Jones Act mandate that only the jury may decide disputed issues of fact as to a plaintiff's seaman status, appears to be at least questionable.

The question of the court's fact finding role depending on the jurisdictional basis of a federal maritime suit is somewhat academic in the context of this motion, however. It seems quite clear to this court that even had the current action been brought under the Jones Act, the court itself could properly determine plaintiff's status as a seaman to whom the duty of seaworthiness is owed. This is because there are no disputed issues of fact as to plaintiff's work functions and as to his relationship with defendant ship and shipowner; thus there are no factual issues regarding plaintiff's status as a seaman for the jury to decide. Cf. *McDermott, Inc. v. Boudreaux,* 679 F.2d 452, 459–60 (5th Cir.1982) (where the undisputed facts show that plaintiff is excluded from coverage under the LHWCA as a matter of law because of the traditional seafaring nature of his duties, the court may exclude plaintiff from LHWCA coverage as a Jones Act employee as a matter of law rather than referring the issue to a jury). (Even if there were any factual issue as to plaintiff's coverage under the LHWCA—the real crux of this motion—such an issue would ordinarily be decided not by a jury but by administrative tribunal. See, e.g., *Northeastern Marine Terminal Co. v. Caputo,* 432 U.S. 249, 253 & n. 3, 97 S.Ct. 2348, 2352 & n. 3, 53 L.Ed.2d 320 (1977)).

The issue before the court in determining whether plaintiff is entitled to press his seaworthiness cause of action is entirely a legal issue of whether or not in light of the purposes and subsequent interpretations of the 1972 Amendments to the LHWCA plaintiff is covered by that statute and is thus barred from asserting a seaworthiness claim. Thus, it is properly decided by the court on this motion to dismiss.

rise to a remedy for some one-time act of negligence. *Id.* at 498–500, 91 S.Ct. at 516–518.

■ The crucial aspect of the unseaworthiness remedy in this case, however, at least for present purposes, regards the question of to whom the duty of seaworthiness is owed. It should be noted initially that the warranty of seaworthiness is separate and independent of statutory and other general maritime remedies. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498, 91 S.Ct. 514, 516, 27 L.Ed.2d 562 (1971); *Mitchell v. Trawler Racer*, 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960). Thus, the class of persons to whom it is owed may include some persons who are not covered by familiar maritime remedies, including statutory ones. Whether or not, for example, a plaintiff is a "seaman" covered by the Jones Act, 46 U.S.C. Section 688, the general maritime remedy of seaworthiness may still be available to him.

■ In the instant case this independence of the general seaworthiness remedy is crucial. Jones Act status requires 1) a vessel in navigation; 2) plaintiff's more or less permanent attachment to the vessel, and 3) that plaintiff's employment be primarily in aid of navigation. *Harney v. William M. Moore Bldg. Corp.*, 359 F.2d 649, 654 (2d Cir.1966). Because plaintiff Clark concededly had no sort of permanent attachment to the ship on which his accident occurred, he is clearly not covered by the Jones Act, and can only rely on the general maritime remedy of seaworthiness if he is to prevail on a cause of action for unseaworthiness.[2]

The development of the coverage of the general maritime duty of seaworthiness has a complicated and somewhat obscure history. Beginning at least as early as

1903 with *The Osceola*, 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903), and as gropingly expounded in numerous Supreme Court cases since that time, see *Mitchell v. Trawler Racer*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) (an exhaustive and erudite survey of the doctrine's history), American courts have recognized the right of seamen crew members under general maritime law to recover for injuries sustained because of the unseaworthy condition of their vessel.

The scope of the class of persons to whom the duty of seaworthiness is owed was greatly expanded in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The plaintiff in this case was a stevedore not directly employed by the vessel on which his injury occurred. *Sieracki* held that the existence or not of a contractual relationship between plaintiff and a ship owner was immaterial to the availability of the seaworthiness remedy. Instead, what was crucial to the remedy was "[n]ot the owner's consent to liability, but his consent to [plaintiff's] performance of service" on his ship. *Id.* at 96, 66 S.Ct. at 878. The court's opinion was based on its judgment that because the seaworthiness remedy historically was derived from "the hazards which maritime service places upon men who perform it, rather than any consensual basis of responsibility," *id.* at 94, 66 S.Ct. at 877, "when a man is performing a function essential to maritime service on board a ship[,] the fortuitous circumstances of his employment by the shipowner ... should not determine the measure of his rights." *Id.* at 97, 66 S.Ct. at 878.

The doctrine of the *Sieracki* seaman was explicitly reaffirmed by the Supreme Court several years later in the case of *Pope &*

---

2. It has been frequently observed that the coverage of the Jones Act and of the Longshoremen's and Harbor Workers' Compensation Act, see infra p. 7–12, are mutually exclusive. See, e.g., *Weiss v. Central Railroad Co. of New Jersey*, 235 F.2d 309, 311 (2d Cir.1956). Defendant suggests that because plaintiff, not having a permanent attachment to defendant vessel, is not covered by the Jones Act, he therefore must be covered

by the LHWCA and thus is precluded from asserting a seaworthiness claim (LHWCA employees may not sue for seaworthiness but only for negligence). See infra, p. 7–8. The logical flaw of this argument should be obvious. The exclusivity of Jones Act and LHWCA coverage is essentially irrelevant to one not covered by either statute.

*Talbot, Inc. v. Hawn,* 346 U.S. 406, 412–413, 74 S.Ct. 202, 206–207, 98 L.Ed. 143 (1953). See also *Alaska Steamship Co. v. Petterson,* 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954). In extending the duty of seaworthiness to a plaintiff who was an independent contractor repairman aboard defendant vessel, the *Pope & Talbot* court emphasized that the expansive legal protection granted in *Sieracki* was based not on the stevedore status of plaintiff in that case but on more general considerations. The remedy allowed by *Sieracki* depended "not ... on the name 'stevedore' but on the type of work [plaintiff] did and its relationship to the ship and the historic doctrine of seaworthiness." *Pope & Talbot,* supra 346 U.S. at 413, 74 S.Ct. at 207. In sum, *Sieracki's* expansion of the class of persons to whom the duty of seaworthiness was owed was coextensive with the limits of that group of workers who needed the doctrine's protection because subjected to the same dangers as those seamen crew members directly employed by the vessel. *Id.*

Several years later in *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), while denying the seaworthiness remedy to a non-working social visitor aboard defendant vessel, the Supreme Court again reaffirmed the broad holding of *Sieracki,* that the absolute right to a seaworthy ship extends to members of ship's company and also to others aboard ship doing seaman's work and incurring a seaman's hazards. Id. at 629–632 & note 9, 79 S.Ct. at 409–410 & note 9. More recently, the Second Circuit has taken it as a truism that the duty to provide a seaworthy ship extends not only to the owner's employees but to all "who perform the ship's service ... with his consent or by his arrangement." *Mahramas v. American Export Isbrandtsen Lines, Inc.,* 475 F.2d 165, 169 (2d Cir.1973) (quoting *Sieracki,* supra 328 U.S. at 95, 66 S.Ct. at 877).

The 1972 Congressional amendments to the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") sharply curtailed the availability of the seaworthiness doctrine to non-ship employee *"Sier-*

*acki* seaman" by removing the remedy from all workers covered by the LHWCA. 33 U.S.C. Section 905(b). Among many other important revisions effected by the 1972 amendments to the LHWCA, see *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 261–262, 97 S.Ct. 2348, 2356, 53 L.Ed.2d 320 (1977), was the amendment of the definition of the term "employee" as used to designate all persons covered by the Act. 33 U.S.C. Section 902(3). Defendant's argument in this case that plaintiff is not entitled to the general maritime cause of action for unseaworthiness depends entirely on these 1972 amendments to the LHWCA. Defendant contends that the 1972 revisions in the definition of a LHWCA-covered employee have both brought plaintiff within the coverage of the LHWCA, and concomitantly, have deprived him, along with all other LHWCA employees, of his pre-1972 entitlement under *Sieracki,* to the warranty of seaworthiness.

Prior to 1972 the LHWCA failed to define the term "employee" affirmatively. Instead, it simply provided for compensation "in respect of disability or death of an employee ... result[ing] from an injury occurring upon the navigable waters of the United States." The scope of the Act's coverage was importantly limited, however, by the provision that "[t]he term 'employee' does not include a master or member of a crew of any vessel...." See *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 252, 97 S.Ct. 2348, 2351, 53 L.Ed.2d 320 (1977). The 1972 amendments to the LHWCA defined the word "employee" more affirmatively and comprehensively, in terms of job function rather than merely in terms of the situs of the injury. As amended, LHWCA "employees" include "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and ship breaker;" still excluded from the statute's coverage, however, is "a master or member of a crew of any vessel." 33 U.S.C. Section 902(3).

Defendant argues that because plaintiff Ellis Clark was engaged in "maritime employment" at the time of his accident, yet was not a member of the ship's crew in the traditional sense of being in the vessel's direct employ and in its service for the entire voyage, he is thus newly included in the LHWCA's coverage.

■ Defendant's argument must fail because it is clear that the coverage of the LHWCA, either in its pre-1972 or post-1972 formulation, does not include river pilots such as plaintiff. The court has discovered and defendant has offered not a single decision in which river pilots or other workers performing similar navigational functions have been held to be covered by the LHWCA. Indeed, in 1927, soon after the LHWCA was first enacted, the United States Employees' Compensation Commission, the body in charge of implementing the Act, issued an opinion explicitly stating that a temporary pilot of a vessel, though not strictly a master or member of the crew, is included within the term "master or member of a crew" as used in Section 902 of the LHWCA, and is thus not among the persons protected by the Act. "Longshoremen's Act, Opinion No. 22," (November 26, 1927), 1928 A.M.C. 263.

Of course, defendant focusses mainly on the 1972 revisions in the definition of LHWCA "employee," and particularly on the statute's phrase "any person engaged in maritime employment," for its argument that plaintiff comes within the Act's coverage. There is a superficial plausibility to this argument, but it is a plausibility that comes of reading the statute over-literally. It is clear from the purposes of the LHWCA generally, and specifically from the Congressional intent behind the 1972 revision of the scope of LHWCA-covered "employees," that ship pilots are not within the Act's coverage. The LHWCA was originally enacted in 1927 to protect those amphibious waterfront employees, such as longshoremen and other harbor workers doing loading and repair work, who came within neither state workers compensation systems nor within the traditional federal admiralty jurisdiction. See generally *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 256–260, 97 S.Ct. 2348, 2353–2355, 53 L.Ed.2d 320 (1977). The legislative history of the 1972 amendments and the decisional law interpreting these amendments reveal their similar preoccupation with these amphibious waterfront laborers whose functions straddle both land and sea.

■ Numerous and detailed interpretations of the revised 1972 definition of LHWCA "employee" and of the congressional intent behind this revision have been offered in recent years by the Supreme Court. See, e.g., *Herb's Welding, Inc. v. Gray*, —— U.S. ——, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985); *Director, OWCP v. Perini North River Associates*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983); *P.C. Pfeiffer Co., Inc. v. Diverson Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Northeastern Marine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). These cases make it abundantly clear that for LHWCA purposes, the new phrase "maritime employment" in the statute's revised definition of "employee" was meant essentially to extend the Act's coverage to persons who, though engaged in traditional longshoring operations, were shore based. In general, the revised scope of LHWCA employee coverage effected by the 1972 amendments was intended to correct the anomoly that had developed under previous case law whereby a worker's eligibility for benefits depended on which side of the shoreline he happened to be situated at the moment he was injured. *P.C. Pfeiffer Co., Inc.*, supra, 444 U.S. at 72–73, 77–84, 100 S.Ct. at 331–332, 334–338; *Northeastern Marine Terminal Co.*, supra, 432 U.S. at 259–260, 262–264, 97 S.Ct. at 2356–2357. Moreover, with the advent of the container revolution, many employees doing traditional longshoring work were located on shore rather than "upon navigable waters." Wishing to ensure LHWCA coverage to such persons by expanding shoreward the situs of workers to whom the Act applied, yet not wishing to

include such workers as clerical personnel and warehouse guards within the Act, it was necessary for Congress to include the term "maritime employment" to stress the importance of job function in determining LHWCA eligibility. See generally *P.C. Pfeiffer Co., Inc.,* supra 444 U.S. at 74–75, 100 S.Ct. at 332–333; *Northeastern Marine Terminal Co.,* supra 432 U.S. at 269–270, 97 S.Ct. at 2360.

Implicit in these Supreme Court interpretations of the 1972 LHWCA amendments, interpretations which focus on the longshoring nature of the newly covered employees' functions as well as the extended coverage *shoreward* of the Act, is that on-board workers performing purely navigational functions, and not covered by the pre-1972 LHWCA, are also not covered by the amended 1972 version of the statute. Congress's concern in passing the 1972 amendments to the LHWCA definition of "employee"

> was the desire to extend coverage to longshoremen, harborworkers, and others who were injured while on piers, docks, and other areas customarily used to load and unload ships or to repair and build ships, rather than while actually afloat. *Herb's Welding, Inc. v. Gray* [— U.S. ——, 105 S.Ct. 1421, 1425,] 84 L.Ed.2d 406, 412 (1985) (denying LHWCA coverage to offshore oil workers.)

As the Second Circuit explained in *Pittson Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 53–54 (2d Cir.1976) (Friendly, J.), the new definition of employee under

Section 902(3) of the LHWCA to include workers in "maritime employment" should be understood simply as a means of broadening the scope of LHWCA coverage to those persons engaged in traditional "longshoring operations" whose LHWCA status might be compromised by the advent of the container revolution and the move shoreward of much traditional longshoring work, as well as by the anomolous line of decisions that had made a worker's LHWCA eligibility contingent on the fortuity of where he happened to be situated at the moment of his injury. Somewhat cryptically, but clearly intending to underscore the intent of the revised Act to cover persons engaged in "longshoring operations," *Pittson* states that "[i]f there were any doubt on the face of the statute, the legislative history makes it clear that Section 902(3) . . . . is to be construed no differently than if it said 'any longshoreman or other person engaged in longshoring activity or engaged in other maritime employments.' " Id. at 52.[3]

The 1972 amendments to the LHWCA give no indication of any intent to include within the Act's coverage persons who though not formally "members of the crew," perform the traditional navigational functions of seamen. If a worker is employed primarily in aid of navigation, he is a "member of the crew" for purposes of exclusion from the LHWCA. *McDermott, Inc. v. Boudreaux,* 679 F.2d 452, 458 (5th Cir.1982). This is consistent with the pre-1972 interpretation that LHWCA-excluded "members of the crew," as opposed to stat-

---

**3.** While *Klarman v. Santini,* 503 F.2d 29 (2d Cir.1974), an earlier Second Circuit case, referred to the revised LHWCA definition of "employee" in barring a non-longshoring type plaintiff from a *Sieracki* seaworthiness remedy, *Klarman* is distinguishable from the present case because it relied primarily on the fact that plaintiff therein was not engaged in a seaman's functions on the vessel where his accident occurred but was instead on board simply as a passive observer. Id. at 36. See also *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 629–632, 79 S.Ct. 406, 409–411, 3 L.Ed.2d 550 (1959) (*Sieracki* remedy, while available to those on board ship in ship's service regardless of formal employment relationship with ship, not available to mere social invitee not engaged

in service to the vessel). Moreover, the suggestion in *Klarman* that a person in a ship's service yet not a member of the crew in the sense of having an employment relationship with the vessel, might be covered by the LHWCA, is severely undermined by the fact that the *Klarman* court did not yet have benefit of the Supreme Court's subsequent, elaborate interpretations of the 1972 amendments, see, e.g., *P.C. Pfeiffer Co., Inc. v. Diverson Ford,* 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Northeastern Marine Terminal Co., v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), emphasizing that the expanded LHWCA employee coverage was meant to protect shore-based or shore straddling employees engaged in traditional harbor work and longshoring operations.

utorily covered longshoremen and harbor workers, are to be distinguished by their functions primarily in aid of navigation. See *South Chicago Coal & Dock Co., v. Bassett*, 309 U.S. 251, 260, 60 S.Ct. 544, 549, 84 L.Ed. 732 (1940). As stated by the Supreme Court, the persons covered by the LHWCA are those whose services aboard the vessel are "of the sort performed by longshoremen and harbor workers *and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation.*" Id. at 260, 60 S.Ct. at 549 (emphasis added). Although "[t]he word 'crew' does not have an absolutely unvarying legal significance, ... '[w]hen the 'crew' of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board.' " Id. at 258–259, 60 S.Ct. at 548–549 (citing *The Bound Brook*, 146 F. 160, 164 (D.Mass.1906)).

Accordingly, this court sees no basis for finding that a river pilot such as plaintiff is included within the revised coverage of the LHWCA under the 1972 amendments. Plaintiff not being an LHWCA-covered employee, there is no reason to deny plaintiff the seaman's traditional remedy for unseaworthiness that is clearly his due as a "*Sieracki* seaman." See *Aparicio v. Swan Lake*, 643 F.2d 1109 (5th Cir.1981) (maritime worker, not covered by LHWCA, could invoke *Sieracki* unseaworthiness cause of action against non-employer vessel owner).

■ As the Supreme Court pointedly remarked in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 100, 66 S.Ct. 872, 880, 90 L.Ed. 1099 (1946), a vessel owner has certain general obligations to those who work for him—whether or not these workers have contracted with him directly—that cannot be delegated away by subcontracting. Under *Sieracki* and the broad principles of employer responsibility enunciated therein, defendant's obligation to provide a seaworthy ship to his temporary pilot Ellis Clark, was not one that he could delegate

away, this notwithstanding the obvious convenience to any employer of so being able to delegate away such responsibilities. The justice of this conclusion is especially striking in this case. The result of barring plaintiff from his remedy against defendant shipowner here would be essentially to cast the liability onto the independent subcontractor, Ellis Clark, Inc., who, as it turns out is none other than the injured worker himself.

Accordingly, not being a person covered by the LHWCA and the 1972 amendments thereto, plaintiff Ellis Clark is entitled to pursue his cause of action for unseaworthiness. Defendant's motion to dismiss plaintiff's seaworthiness cause of action is correspondingly denied.