Helen Ehret BACH, Eugene G. Bach III, and Janet B. Lashley, Plaintiffs,

v.

TRIDENT SHIPPING CO., INC.; Kaiser Aluminum and Chemical Corp.; and the Jaymat Trident, in rem, her engines, tackle, appurtenances, equipment, etc., Defendants.

Civ. A. No. 87–5899.

United States District Court,
E.D. Louisiana.

Oct. 18, 1988.

On Motion for New Trial Nov. 4, 1988.

See also 708 F.Supp. 776.

Gregory F. Gambel, Mark W. Smith, New Orleans, La., for plaintiffs.

Robert H. Murphy, Thomas D. Forbes, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

### ORDER AND REASONS

PATRICK E. CARR, District Judge.

This matter came before the Court for hearing on Wednesday, October 12, 1988 on defendants' motion for [partial] summary judgment [to dismiss plaintiffs' Jones Act

---

and unseaworthiness claims]. At the hearing, the Court GRANTED the motion; the Court now gives written reasons for its ruling.

■ Apparently, no court in this Circuit has yet addressed whether the Jones Act or the general maritime warranty of seaworthiness applies to compulsory river pilots on the Mississippi River. Today, this Court holds that neither applies to such persons.

## I.

Plaintiffs are the wife and surviving children of decedent, Eugene Bach Jr., who allegedly suffered a fatal heart attack on December 26, 1986 aboard the M/V JAYMAT TRIDENT, which was owned and operated by defendant Trident Shipping Co., Inc. and under a voyage charter to defendant Kaiser Aluminum and Chemical Corp.

Decedent was self-incorporated, was a member (a general partner, according to his tax return) of the Crescent River Port Pilots' Association, and was the compulsory pilot the Association assigned to navigate the JAYMAT TRIDENT downriver from New Orleans to Pilottown. According to the deposition of decedent's son, who is also a river pilot, decedent was *not* a member of the JAYMAT TRIDENT's crew and, as a pilot, was considered an independent contractor.

Plaintiffs have sued Trident and Kaiser *in personam* as well as the JAYMAT TRIDENT *in rem* and allege that negligence of Trident and Kaiser and unseaworthiness of the JAYMAT TRIDENT (specifically, concerning defects in the pilot's ladder and lack of adequate medical attention) caused decedent's death.

## II.

Defendants now move to dismiss plaintiffs' Jones Act and unseaworthiness claims, leaving just a § 905(b) general maritime negligence claim. Defendants make two arguments: first, that decedent was not an employee of either Trident or Kaiser; and second, that decedent was not a seaman as to either Trident or Kaiser in general or to the JAYMAT TRIDENT in

specific. The Court agrees with both arguments.

### A. *An Employee?*

It is now well established that an employer-employee relationship is essential for recovery under the Jones Act, 46 U.S.C.App. § 688. *E.g., Spinks v. Chevron Oil Co.,* 507 F.2d 216, 224 (5th Cir.1975), *clarified on other grounds,* 546 F.2d 675 (5th Cir. 1977).

■ Decedent's son, the river pilot, states by affidavit that defendants had a right to refuse decedent's services, could have discharged decedent, and paid decedent's "wages." None of these points, however, is inconsistent with defendants' position, to which decedent's son admitted in his deposition, that decedent was acting as an independent contractor through his Pilots' Association. *Cf. The CHINA,* 74 U.S. (7 Wall.) 53, 67–68, 19 L.Ed. 67 (1868) (the master may discharge a compulsory pilot, whom the vessel must pay). *Contrast Magnolia Towing Co. v. Pace,* 378 F.2d 12, 13 (5th Cir.1967) (per curiam) (affirming a Jones Act verdict in favor of plaintiff/river pilot, who had worked directly for the defendant over one year and was paid a monthly salary by the defendant; stating that that particular plaintiff "was permanently assigned as a pilot to one or another of defendant's tugboats"); *see also Daughdrill v. Diamond M Drilling Co.,* 447 F.2d 781, 784 (5th Cir.1971) (characterizing the plaintiff in *Pace* as "the salaried pilot [under] ... his employer's specific instructions"), *cert. denied,* 405 U.S. 997, 92 S.Ct. 1261, 31 L.Ed.2d 466 (1972). *See generally* C. Black & G. Gilmore, *The Law of Admiralty* § 7–16, at 520 (2d ed. 1975) ("A pilot may be taken on voluntarily *or* under the compulsion of some local statute or regulation. The *voluntary* pilot is in much the same position as any other crew member." (emphasis added)).

Plaintiffs' effort to characterize the pilot fee as "wages" is insufficient to create a question of fact as to employee status. The elaborate statutory fee schedule and mandatory use of river pilots further support defendants' position. *See generally*

La.RSA §§ 34:941–:1127 (West 1985 & West Supp.1988).

As the Supreme Court stated:

Pilots hold a unique position in the maritime world and have been regulated extensively both by the States and Federal Government. Some state laws make them public officers, chiefly responsible to the State, not to any private employer. Under the law and custom they have an independence wholly incompatible with the general obligations of obedience normally owed by an employee to his employer. Their fees are fixed by law and their charges must not be discriminatory. As a rule no employer, no person can tell them how to perform their pilotage duties.

*Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 93–94, 75 S.Ct. 629, 634, 99 L.Ed. 911 (1955) (footnotes omitted). For example, unlike ordinary agents such as employees, compulsory river pilots in Louisiana are immune from liability to vessel owners and others—save for gross negligence or willful misconduct, claims for which only the Board of River Port Pilot Commissioners may hear. *See* La.RSA § 34:1001 (West Supp.1988).

In sum, the Court holds that compulsory pilots in general are not covered by the Jones Act as to those whose vessels they pilot and that decedent in specific was not covered by the Jones Act as to Trident or Kaiser.

### B. *A Seaman?*

■ The test for seaman status is also well established in this Circuit. For a person to be found a seaman, it must be established (1) that he was assigned permanently to a vessel in navigation or performed a substantial part of his work aboard a vessel or a fleet of vessels *and* (2) that his work contributed to the function of the vessel or to the accomplishment of its mission. *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959), *reaff'd en banc Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1073–74 (5th Cir.1986).

The question of seaman status is generally a jury question; where there is no reasonable basis to support a jury finding on the issue of seaman status, however, summary judgment denying seaman status is proper. *E.g., Lormand v. Superior Oil Co.*, 845 F.2d 536, 539 (5th Cir.1987), *cert. denied sub nom. Lormand v. Aries Marine Corp.*, —— U.S. ——, 108 S.Ct. 739, 98 L.Ed.2d 774 (1988).

■ At issue is whether plaintiffs can satisfy the first prong of the *Robison* test. The record is absolutely devoid of any evidence that decedent was assigned permanently to the JAYMAT TRIDENT or performed a substantial part of his work aboard the JAYMAT TRIDENT or aboard a fleet of vessels owned by or having any connection with Trident or Kaiser. *Contrast Magnolia Towing*, 378 F.2d at 13. While it is probable that most, if not all, of decedent's work was done aboard vessels, such is insufficient to show that decedent was assigned to a *fleet* of vessels belonging to or having some connection to Trident or Kaiser (or, for that matter, any other single company), for the Fifth Circuit uses this term of art to mean "any group of vessels acting *together* or under *one* control." *Barrett*, 781 F.2d at 1074 (emphasis added). There is no evidence in the record that decedent's connection with any of the defendants was anything but transitory. *See id.* & n. 9.

Because a plaintiff bears the burden to establish seaman status, the Court may not presume, without any evidence on the point, that decedent served as a pilot only on the JAYMAT TRIDENT or only on vessels owned by or having even the most remote connection with Trident or Kaiser. *Cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (where non-moving party bears the burden of proof on an issue for which summary judgment is sought, that party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion).

Plaintiffs argue that even if decedent was not a seaman, the rule under *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (extending the warranty of seaworthiness to non-sea-

men), still survives as to river pilots despite the 1972 LHWCA amendment legislatively overruling *Sieracki* as to persons covered by the LHWCA, *see* 33 U.S.C. § 905(b). Plaintiffs overlook this Circuit's rule that a marine worker is either a seaman or an LHWCA employee. *E.g., Pizzitolo v. Electro–Coal Transfer Corp.,* 812 F.2d 977, 982 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); *see* 33 U.S.C. § 902(3)(G) (LHWCA does not cover "a master or member of a crew").

In sum, the Court holds that decedent was not a seaman as to Trident or Kaiser or to the JAYMAT TRIDENT.[1]

### III.

For these reasons, the Court dismisses plaintiffs' Jones Act and unseaworthiness claims. The sole remaining claims are plaintiffs' general maritime negligence claims, which survive under § 5(b) of the LHWCA, 33 U.S.C. § 905(b).

### ON MOTION FOR NEW TRIAL

This matter is before the Court on plaintiffs' motion for new trial; they have set the motion for hearing on November 16, 1988.

Determining in its discretion that oral argument is unnecessary and inappropriate, the Court hereby CANCELS the motion hearing and now DENIES the motion.

Plaintiffs urge that this Court misconstrued the continuing effect of *Sieracki.* They quarrel with this Court's statement that "[p]laintiffs overlook this Circuit's rule that a marine worker is either a seaman an or LHWCA employee." Order and Reasons at 6 (citing *Pizzitolo* ). Plaintiffs construe the statement too broadly; while, as plaintiffs correctly imply, a person who

works for the federal government or beyond the territorial jurisdiction of the United States' navigable waters is not covered by the LHWCA, *Aparicio v. Swan Lake,* 643 F.2d 1109 (5th Cir.1981), there is no suggestion in the instant case that the decedent river pilot came within these narrow exceptions to LHWCA coverage.

Plaintiffs continue to ignore what is implicit in the Court's original Order and Reasons: that river pilots can, and the decedent did, come within the reach of the LHWCA. As a marine worker who was not a master or member of a crew and who worked within Louisiana territorial waters and not for the federal government, decedent was covered by the LHWCA. Being covered by the LHWCA, § 905(b) precludes any claims for unseaworthiness.

Plaintiffs also dispute the Court's summary judgment ruling that defendants were not decedent's employer. Plaintiffs misconstrue the Court's ruling. The Court found no employment relationship not because decedent's son admitted that his father was an independent contractor (that admission merely corroborated the Court's legal conclusion), but because the evidence plaintiffs presented was insufficient to raise a jury question especially in light of Louisiana's detailed statutory system governing compulsory river pilots. In any event, even accepting plaintiffs' position for argument's sake, Jones Act coverage would still be unavailable, for the Court held in the alternative that decedent was not a seaman under *Robison* for Jones Act (and unseaworthiness) purposes.

1. Plaintiffs cite *Clark v. Solomon Navigation, Ltd.,* 631 F.Supp. 1275 (S.D.N.Y.1986) (no Jones Act claim allowed, but an unseaworthiness claim allowed by a river pilot) and *Ringering v. Compañia Maritima De–La–Mancha,* 670 F.Supp. 301 (D.Or.1987) (following *Clark* ), *aff'd without published opinion,* 848 F.2d 1243 (9th Cir.1988). While holding that the plaintiff did not satisfy the permanent-assignment prong of the *Robison* test for Jones Act purposes, *Clark* disregards this same fact for the unseaworthiness claim in order to conclude that the plain-

tiff was not covered by the LHWCA on grounds of being a crew member; further, *Clark* does not apply this Circuit's rule that every marine worker is either a seaman or an LHWCA worker.

Plaintiffs also cite Longshoremen's Act Opinion No. 22, 1928 A.M.C. 263 (1927), which states that a pilot is a "member of a crew of a vessel." While valid under limited circumstances, *see, e.g., Magnolia Towing,* 378 F.2d 12, the opinion likewise fails to address *Robison* 's permanent-assignment requirement.