Wallace S. HARWOOD, Jr.,
Plaintiff-Appellee,

v.

PARTREDEREIT AF 15.5.81,
Defendant-Appellant.

Wallace S. HARWOOD, Jr.,
Plaintiff-Appellant,

v.

PARTREDEREIT AF 15.5.81,
Defendant-Appellee.

Nos. 90–2351, 90–2359.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1990.
Decided Sept. 5, 1991.

---

John E. Holloway, Richard T. Robol, argued (Philip N. Davey, on brief), Hunton & Williams, Norfolk, Va., for defendant-appellant.

Peter W. Rowe, Stackhouse, Rowe & Smith, Norfolk, Va., for plaintiff-appellee.

Before ERVIN, Chief Judge, CHAPMAN, Senior Circuit Judge, and NORTON, District Judge for the District of South Carolina, sitting by designation.

## OPINION

CHAPMAN, Senior Circuit Judge:

Plaintiff Wallace Harwood ("the pilot" or "Harwood"), a harbor pilot, was injured while attempting to board the defendant's ship, M/V CAPTAIN MOST. Harwood brought suit in federal court alleging causes of action under the Jones Act and general maritime law. The district court entered summary judgment for defendant on the Jones Act claim, and, after being instructed on negligence and unseaworthiness, the jury returned a verdict for the plaintiff in the amount of $700,000.00. Defendant appeals claiming that Harwood was covered by the Longshore and Harbor Workers' Act and it was prejudicial error to instruct the jury that he was owed the warranty of seaworthiness by the defendant.

At the time of the accident, Harwood was licensed as a pilot by the Commonwealth of Virginia for the waters from Cape Henry to Newport News and on the Elizabeth River. He was a member and part owner of the Virginia Pilot Association but functioned as an independent contractor. Pilotage in Virginia is governed by state statute. *See* Va.Code Ann. §§ 54.1–900 *et seq.* (1988). These statutes require that a vessel owner accept the first Virginia pilot to offer his services or face a criminal penalty. Va.Code Ann. § 54.1–927 (1988).

On December 17, 1987, the M/V CAPTAIN MOST, a Danish flag vessel homeported in Svendborg, Denmark, called at Hampton Roads, Virginia in the early morning hours. Plaintiff was the first pilot to offer his services to pilot the ship into Hampton Roads. While attempting to board the vessel, the pilot ladder broke and Harwood fell into the ocean. During the fall or while being pulled into the pilot launch, Harwood injured his shoulder severely enough to prevent him thereafter from working effectively as a pilot.

Harwood sued in the U.S. District Court for the Eastern District of Virginia alleging causes of action under the Jones Act and general maritime law. The district court granted defendant's motion for summary judgment on the Jones Act claim but denied defendant's summary judgment motion on the unseaworthiness claim. The case was tried on allegations of negligence and unseaworthiness. At the conclusion of the plaintiff's case, defendant moved for a directed verdict, arguing that as a matter of law, Harwood was not entitled to the warranty of seaworthiness and that the evidence was insufficient to support a finding of negligence. The district court denied the motion. At conclusion of defendant's case, both parties moved for a directed verdict. The motions were denied and the case went to the jury. Over the defendant's objection, the court instructed the jury on Harwood's unseaworthiness claim as follows:

> The claim of negligence and the claim of unseaworthiness in this case are separate claims, and you must consider them separately, in accordance with these instructions.
>
> .    .    .    .    .
>
> The plaintiff would be entitled to the warranty of seaworthiness. Under the maritime law the shipowner or operator owes to the plaintiff a nondelegable duty to keep and maintain the ship and all decks [in a seaworthy condition].... Liability for an unseaworthy condition does not in any way depend upon negligence or blame or fault. That is to say, the owner or operator of a ship is liable for injuries and consequent damage proximately caused by an unseaworthy condition existing at any time, even though the owner or operator may have exercised due care under the circumstances and may have had no notice or knowledge of the unseaworthy condition which proximately caused the injury or damage.

The jury returned a verdict for Harwood in the amount of $700,000.00, and defendant timely appealed to this court.

This appeal presents two issues: (1) whether the district court erred in instructing the jury that plaintiff, a compulsory pilot, was owed the warranty of seaworthi-

ness;[1] and (2) whether this seaworthiness instruction constituted prejudicial error. After considering the record and the applicable law, we conclude that it was prejudicial error to instruct the jury on the seaworthiness claim. We, therefore, reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

### I. Warranty of Seaworthiness

The Longshore and Harbor Workers' Compensation Act ("LHWCA" or "the Act") applies to "any person engaged in maritime employment" but does not apply to, among others, "a master or a member of a crew of any vessel." 33 U.S.C. § 902(3) (1988). Workers covered by the LHWCA are not entitled to a warranty of seaworthiness. 33 U.S.C. § 905(b) (1988).

### A. "Maritime Employment"

Prior to 1972, coverage by the LHWCA was governed by a single situs requirement. *Director, Office of Worker's Compensation Programs v. Perini N. River Associates,* 459 U.S. 297, 298–301, 103 S.Ct. 634, 637–639, 74 L.Ed.2d 465 (1983). This requirement extended LHWCA coverage only to those workers whose "disability or death result[ed] from an injury occurring upon the navigable waters of the United States (including any dry dock)...." LHWCA of 1927, ch. 509, § 3(a), 44 Stat. 1426. The Supreme Court determined that a worker who, in the course of his duty, was required to go on navigable waters and who suffered an injury while in that historically maritime locality, was covered by the pre–1972 LHWCA. *Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). Thus, coverage under the 1927 Act required no inquiry into " 'what [the employee] was doing (or supposed to be doing) at the time of his inju-

ry.' " *Perini,* 459 U.S. at 311, 103 S.Ct. at 644.

■ Under the 1972 amendments to the LHWCA, this relatively simple situs test was modified. The 1972 amendments required that, to be entitled to benefits, a disabled employee must (a) be disabled as the result of "an injury occurring upon the navigable waters of the United States," 33 U.S.C. § 903(a), the "situs" test; and (b) be engaged in "maritime employment" at the time of the injury, 33 U.S.C. § 902(3), the "status" test. Following enactment of the 1972 amendments, the Supreme Court decided that the amendments replaced the single situs requirement with a two-part situs and status standard. *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Northeast Marine Terminal Company, Inc. v. Caputo,* 432 U.S. 249, 264–65, 97 S.Ct. 2348, 2357–58, 53 L.Ed.2d 320 (1977). Now both the status requirement, as defined by section 902(3), based on the nature of the job, and the situs requirement, as defined by section 903(a), based on location, must be satisfied for the LHWCA to apply. *Id.*

It is undisputed that Harwood was injured on the "navigable waters" of the United States, so at the time of his injury, he was engaged in employment that was compensable under the pre–1972 LHWCA. *See Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). However, Harwood contends that as a pilot he was not engaged in "maritime employment" as required by the 1972 amendments to LHWCA. Harwood argues that while "maritime employment" includes loading and unloading vessels, ship repair, or similar work, it does not include pilotage. The Supreme Court in *Perini* considered this argument and rejected it. 459 U.S. at 315, 103 S.Ct. at 646. In *Perini,* the plaintiff

---

**1.** Harwood suggests that he is entitled to the general maritime law warranty of seaworthiness regardless of the statutory analysis set out below. He relies on *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), for this proposition. His reliance is misplaced because Congress specifically overruled *Sieracki* with the 1972 amendments to the LHWCA. *See Edmonds v. Compagnie Generale*

*Transatlantique,* 443 U.S. 256, 262, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1979) (the 1972 amendments intended to "overrule" *Sieracki* ); 1972 U.S.Code Cong. & Admin.News 4702. Furthermore, this court has repeatedly ruled that the 1972 amendments "abolished" the *Sieracki* form of action. *See e.g., United States Lines, Inc. v. United States,* 593 F.2d 570 (4th Cir.1979).

was injured while employed as a construction worker aboard a barge upon the actual navigable waters of the United States. The Court held that the construction worker was covered by the LHWCA even though his employment was not "maritime" in nature, because it was sufficient that he was injured on the navigable waters of the United States in the course of his employment. *Id.* at 324, 103 S.Ct. at 650. The Court observed that, prior to the 1972 amendments, the LHWCA covered only workers who were injured on the navigable waters of the United States and that the amendments expanded coverage to include workers injured while ashore if the worker was engaged in "maritime employment." Thus, the plaintiff in *Perini* qualified for pre–1972 coverage under the LHWCA. Since the amendments were enacted to *expand* the coverage of the LHWCA to shore side workers, and not to narrow its coverage, the Court ruled that the plaintiff was covered by the LHWCA regardless of the nature of his employment because he was injured on the navigable waters of the United States. *Id.* at 323–24, 103 S.Ct. at 650–51.

The Supreme Court reaffirmed this approach to LHWCA coverage in *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). Gray was a welder and was injured while employed on a stationary drilling platform within Louisiana's territorial waters. The Court, finding that the drilling platform was an island, analyzed the limits of LHWCA coverage under the test for landward coverage, and concluded that since the welder's work was "far removed from traditional LHWCA activities," 470 U.S. at 425, 105 S.Ct. at 1428, and therefore not maritime in nature, the welder failed the status requirement for landward coverage. 470 U.S. at 424–26, 105 S.Ct. at 1427–29. The Court qualified this holding as follows:

> This view of "maritime employment" does not preclude benefits for those whose injury would have been covered before 1972 because it occurred "on navigable waters." *Director, OWCP v. Peri-*

*ni North River Associates,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983).

. . . . .

> [W]e point out that [*Perini*] was carefully limited to coverage of an employee "injured while performing his job upon actual navigable waters." 459 U.S. at 299, 103 S.Ct. at 638.

*Herb's Welding,* 470 U.S. at 424, n. 10, 105 S.Ct. at 1428, n. 10.

■ We hold that seaward coverage under the LHWCA does not depend on the nature of the worker's duties. The 1972 amendments to LHWCA do not affect the pre–1972 meaning of "maritime employment" as to workers injured on navigable waters of the United States, because one injured on navigable waters in the course of his employment satisfies both the pre– and post–1972 LHWCA meaning of "maritime employment." When the injury occurs on navigable waters, it satisfies both the "situs" and the "status" test. Therefore, Harwood, who was injured on the navigable waters of the United States, was engaged in "maritime employment."

**B. "Master or Member of a Crew"**

■ The pilot also contends that he was a "master or member of a crew" and therefore specifically excluded from LHWCA coverage by 33 U.S.C. § 902(3)(G). The test to be applied in ascertaining whether a person is "a member of a crew" for purposes of LHWCA is the same as applied in determining whether a person is a "seaman" for purposes of Jones Act jurisdiction. Applying such test, we find that the pilot in this case is not a "master or member of a crew" and is therefore covered by the LHWCA.

■ As the Fifth Circuit noted in *Hardaway Contracting Company v. O'Keeffe,* 414 F.2d 657 (5th Cir.1968), "[f]or a time there seemed to be the possibility that the Supreme Court recognized that the term 'members of a crew of a vessel,' as used in the [LHWCA] might be a more restricted term than the word 'seaman' as used in the Jones Act." *Id.* at 659. However, based upon the Supreme Court's decisions in

*Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946), and *Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), it has become clear that "seaman," as used in the Jones Act, and "member of a crew," as used in the LHWCA, are equivalent terms. *See Pizzitolo v. Electro–Coal Transfer Corp.*, 812 F.2d 977, 982–83 (5th Cir.1987), *cert. denied*, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); *Bertrand v. Int'l Mooring & Marine Inc.*, 700 F.2d 240, 243–44 (5th Cir.1983), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *McDermott Inc. v. Boudreaux*, 679 F.2d 452, 457–58 (5th Cir. 1982); *Travelers Ins. Co. v. Belair*, 412 F.2d 297, 302 (1st Cir.1969); *Hardaway Contracting Co. v. O'Keeffe*, 414 F.2d 657, 659–60 (5th Cir.1968).

In considering plaintiff's Jones Act claim, the district court correctly applied the test for "seaman" or "member of a crew" status articulated by this court in *Stephenson v. McLean Contracting Co.*, 863 F.2d 340, 341 (4th Cir.1988), *cert. denied* 490 U.S. 1085, 109 S.Ct. 2110, 104 L.Ed.2d 671 (1989):

> [A worker] must be a member of a crew of a vessel ... to be a "seaman" under the coverage of the Jones Act.... [There are] three requirements for a worker to be considered "a member of a crew": 1) the worker must be more or less permanently attached to a vessel or fleet; 2) the worker must be one whose duties serve naturally and primarily as an aid to navigation in the broadest sense; and 3) the vessel must be in navigation.

*Stephenson*, 863 F.2d at 341. The district court correctly determined that Harwood failed the first prong of this test, because he was not "more or less permanently at-tached" to the M/V CAPTAIN MOST, and the district court correctly entered summary judgment for defendant on the Jones Act claim. The district court should have applied the same reasoning to plaintiff's seaworthiness claim. Just as the pilot is not a "seaman" for purposes of the Jones Act, he is not a "member of a crew" under the LHWCA.[2] Therefore, the pilot cannot avail himself of section 902(3)(G)'s "master or member of a crew" exclusion from coverage under the LHWCA. Furthermore, since section 905(b), 33 U.S.C. § 905(b), provides that workers covered by the LHWCA are not entitled to the warranty of seaworthiness, the district court erred in instructing the jury on plaintiff's seaworthiness claim.

## II. Effect of Improper Jury Instruction

We must determine whether the district court's seaworthiness instruction constituted prejudicial error. The pilot contends that the instruction was harmless error, but we disagree. The district court instructed the jury on two independent theories of liability (negligence and unseaworthiness) and the jury returned a general verdict in favor of the plaintiff for $700,000.00. Since the defendant may be liable only under a negligence theory, we must closely examine the possible impact of the district court's improper seaworthiness instruction with its no-fault standard of liability. We have held that when a party is prejudiced by an improper instruction, this court should reverse and remand the case for a new trial even when there may be enough evidence to support the jury's verdict on other grounds. *Hodges v. Evisea Maritime Co.*, 801 F.2d 678, 687 (4th Cir. 1986), *cert. denied*, 480 U.S. 933, 107 S.Ct. 1572, 94 L.Ed.2d 764 (1987). When a jury is instructed on two theories of liability,

---

**2.** Since this case was argued, the Supreme Court has had occasion to consider the definition of "master or member of a crew" under the LHWCA. In *McDermott Int'l, Inc. v. Wilander*, ⸺ U.S. ⸺, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), the Court stated that "master or member of a crew" should be defined "solely in terms of the employee's connection to a vessel in navigation." *Id.* at ⸺, 111 S.Ct. at 816–818. Thus, the Court reinforced the importance of the first prong of the *Stephenson* definition while expressly "jettison[ing] the aid in navigation language" included in *Stephenson's* second prong. *Id.* Our holding in this case is consistent with the Court's opinion in *McDermott*. Since Harwood was not "more or less permanently attached" to the M/V CAPTAIN MOST, he cannot satisfy the definition of "master or member of a crew" under the LHWCA.

one which is proper and the other which is not, the court must remand the case for a new trial unless it is " 'reasonably certain' that the jury's verdict was not influenced by the erroneously-submitted ... theor[y]." *Woods v. Sammisa Co.,* 873 F.2d 842, 853–54 (5th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 853, 107 L.Ed.2d 847 (1990); *see also Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734, 742 (5th Cir.1980). Here, the jury returned a general verdict against the defendant. We do not have the benefit of answers to interrogatories accompanying the verdict and cannot determine on which theory the jury reached its decision. There is a significant risk that the jury, having been improperly instructed on the seaworthiness claim, relied upon this erroneous instruction in arriving at its verdict. Therefore, we find that the district court's seaworthiness instruction constitutes prejudicial error.

### III.

For the foregoing reasons, we find that the district court committed prejudicial error in instructing the jury on plaintiff's seaworthiness claim. Accordingly, we reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

REVERSED AND REMANDED.

ERVIN, Chief Judge, dissenting:

The majority is clearly correct in its statement that workers who are covered by the Longshore and Harbor Workers' Compensation Act (Act, or LHWCA) are not entitled to the warranty of seaworthiness. 33 U.S.C.A. § 905(b) (1986). However, because I conclude that Appellant Harwood, as a harbor pilot, is not covered by the Act, I must part company with the majority as to all of its subsequent assertions with regard to the relation between harbor pilots and the Act. I find that the district court's determination that harbor pilots such as Harwood retain access to the warranty of seaworthiness is supported by

precedent and completely in accord with the intent Congress expressed in amending the Act.

### I.

The 1927 Act was designed to provide uniform federal coverage for land-based harbor workers such as longshoremen and ship repairers who were injured while working on vessels upon the navigable waters of the United States and were ineligible to recover state workers' compensation benefits.[1] The Act did not extend benefits to seamen or vessel crew members, who were entitled to a separate remedy under the Jones Act, 46 U.S.C.App. § 688. In effect, the 1927 Act amended the Jones Act to make Jones Act benefits available only to maritime workers who were not covered by the 1927 Act. Workers whom the 1927 Act covered also retained access to a general maritime cause of action for personal injury against shipowners, not their employers, under the warranty of seaworthiness.[2]

Congress amended the Act in 1972 to extend coverage to workers whose injuries occurred not only on the navigable waters of the United States but also on adjacent land-based work locations. 33 U.S.C.A. § 903(a) (1986). The amended Act reworded the definition of "employee" to emphasize job function, expressly providing coverage for workers engaged in occupations such as longshoring, shipbuilding, and ship repairing, and retained the 1927 Act's exclusion from coverage of "a master or member of a crew of any vessel." 33 U.S.C.A. § 902(3) (1986). In exchange for the increased amounts of compensation the amended Act provided, Congress withdrew the covered workers' access to any other remedy against the vessel, including the warranty of seaworthiness. 33 U.S.C.A. § 905(b) (1986); H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4703.

Neither the pre–1972 nor the amended Act specifically includes harbor pilots

---

1. Act of March 4, 1927, Ch. 509, 44 Stat. 1424 (codified as amended at 33 U.S.C. §§ 901–950).

2. See discussion, *infra.*

among the covered employees or defines "master or member of a crew." Soon after the 1927 Act was enacted, however, the United States Employees' Compensation Commission, the body in charge of implementing the Act, issued an opinion explicitly stating that a temporary pilot of a vessel is included within the term "master or member of a crew" as used in Section 902, and thus is not among the persons protected by the Act. *Longshoremen's Act, Opinion No. 22,* 1928 A.M.C. 263 (November 26, 1927). Congress is presumed to have been aware of this official interpretation when it amended the Act in 1972. Moreover, this ruling is congruent with the Supreme Court's definition of "crew" for purposes of the Act. In *South Chicago Coal & Dock Co. v. Bassett,* 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), the Court held that the Act was intended to cover harbor workers such as laborers and longshoremen, as distinguished from those employees who are "naturally and primarily on board to aid in [the ship's] navigation." 309 U.S. at 259–60, 60 S.Ct. at 548–49; *accord Whittington v. Sewer Constr. Co.,* 541 F.2d 427, 434 (4th Cir.1976). It is undisputed that the harbor pilot's duty while on board ship is to navigate the ship into port.

Of the three federal courts which have addressed the question whether the Act covers harbor pilots, only one holds that a

river pilot is not a "master or member of a crew." *See Bach v. Trident Steamship Co., Inc.,* 708 F.Supp. 772, 775 (E.D.La. 1988), *aff'd on other grounds,* 920 F.2d 322 (5th Cir.1991), *vacated,* — U.S. ——, 111 S.Ct. 2253, 114 L.Ed.2d 706 (1991).[3] The remaining decisions reflect the official opinion that pilots are "members of a crew." *Clark v. Solomon Navigation, Ltd.,* 631 F.Supp. 1275 (S.D.N.Y.1986);[4] *Ringering v. Cia Maritima DeLa–Mancha,* 670 F.Supp. 301 (D.Ore.1987). Common sense verifies this conclusion. In order to carry out his duties, the harbor pilot must board a ship he does not know and work with equipment he has not had a chance to examine. If the shipowner has a duty to provide a seaworthy vessel and equipment to the members of the crew, who have been excluded from the Act so that they may retain the benefit of that warranty as well as other general maritime remedies, surely the harbor pilot performing navigational duties aboard the ship with that same equipment is owed the same duty.

The majority presents as a matter of settled law the proposition that the test for determining whether an individual is a "member of the crew" for purposes of the Act is the same as the test applied in ascertaining whether the individual is a "seaman" under the Jones Act; in other words, that a maritime worker's status under the Act is defined solely by whether or not he qualifies as a Jones Act seaman.[5] Yet in only one Circuit, the Fifth, have the

---

**3.** No reported decision to date has cited *Bach* for this proposition. The appeals court, in affirming the district court's finding that the harbor pilot Bach failed to meet the causation requirements necessary to prevail on his negligence claim, observed that the record did not clearly reveal whether Bach was covered by the Act. 920 F.2d at 327. The Supreme Court granted *certiorari* and on June 3, 1991 vacated the judgment, remanding it to the Fifth Circuit for further consideration in light of *McDermott International, Inc. v. Wilander,* 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (discussed *infra*).

**4.** *Clark* has been cited with approval in *Marroquin v. American Trading Transportation Co., Inc.,* 711 F.Supp. 1165 (E.D.N.Y.1988) and *Coloma v. Director, OWCP,* 897 F.2d 394 (9th Cir. 1990).

**5.** The Jones Act test as it is applied in this Circuit requires fulfillment of the following criteria: (1) the seaman must be more or less permanently attached to a vessel or fleet; (2) the seaman must be one whose duties serve naturally and primarily as an aid to navigation in the broadest sense; and (3) the vessel must be in navigation. *Stephenson v. McLean Contracting Co.,* 863 F.2d 340, 341 (4th Cir.1989); *Whittington v. Sewer Constr. Co.,* 541 F.2d 427, 436 (4th Cir.1976). Harbor pilots can rarely meet this test because they are usually not "more or less permanently attached" to the ships on which they work. In the case at hand, the district court ruled that Harwood did not qualify as a Jones Act seaman for exactly that reason. *Harwood v. Partredereit af. 15.5.81,* CA–89–638–N, slip op. at 2–3, 1990 WL 141942 (E.D.Va.1990).

federal courts explicitly so held.[6] *See, e.g., Pizzitolo v. Electro–Coal Transfer Corp.,* 812 F.2d 977, 982–83 (5th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988); *Hardaway Contracting Co. v. O'Keeffe,* 414 F.2d 657, 659–60 (5th Cir.1968).

Despite this aberrant line of cases, there is nothing in the statute or the legislative history to support the contention that, in order to qualify for status as a "master or member of the crew" under the Act, a maritime worker *must* meet the Jones Act test. It is true that Jones Act status and coverage under the Act are mutually exclusive: an employee covered under the Act cannot also be covered under the Jones Act, and if an employee meets the Jones Act criteria he will automatically be excluded from Act coverage because he will also be a "master or member of the crew." It does not follow logically from this, however, that the *sole* criterion for establishing "master or member of the crew" status is the Jones Act test, or that the Jones Act and the Act constitute the entire universe of coverage for maritime workers performing navigational duties. The law in this Circuit recognizes that passage of the Jones Act and LHWCA did not eliminate the general maritime law of the United States for seamen who are not covered by either act. *See Stephenson v. McLean Contracting Co.,* 863 F.2d 340 (4th Cir. 1989), and *Whittington, supra,* 541 F.2d at 436 (in both cases, plaintiffs were construction workers who claimed only Jones Act status; court acknowledged that warranty of seaworthiness existed but was not applicable where plaintiffs could not qualify for admiralty jurisdiction).

Contrary to the majority's assertion, the Supreme Court has never held that "seaman" as used in the Jones Act and "member of a crew" as used in the Act are equivalent terms, in the sense that only those who qualify for Jones Act seaman status can be "members of the crew" under the Act. The cases cited in support, *Swanson v. Marra Bros., Inc.,* 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946), and *Senko v. LaCrosse Dredging Corp.,* 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), do not reveal such a holding even upon the most imaginative of readings. *Swanson* speaks only to *longshoremen,* holding that a longshoreman injured on the dock was not covered either by the 1927 Act or by the Jones Act and must resort to state compensation laws. The Court stated no more than that the Jones Act and the Act are mutually exclusive. 328 U.S. at 7, 66 S.Ct. at 872. *Senko* states that Jones Act coverage extends to "members of a crew," but does not hold that the Jones Act is their exclusive remedy. *Senko* merely indicates that such workers, pre–1972, were *entitled to recover* under the Jones Act. 352 U.S. at 373, 77 S.Ct. at 417.

The Supreme Court's most recent opinion addressing seaman status for Jones Act purposes goes no further toward stating the rule the majority favors than did *Swanson* and *Senko. McDermott International, Inc. v. Wilander,* —— U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). In *McDermott,* the narrow issue the Court faced was whether a paint foreman injured on an oil drilling platform in the Persian Gulf while assigned to a "paint boat" carrying his painting equipment qualified as a Jones Act seaman. The Court unanimously affirmed the Fifth Circuit's finding that the plaintiff qualified under the Fifth Circuit's test for Jones Act seaman status, which did not require that a worker must aid in the navigation of a vessel in order to be a Jones Act seaman. In the process of illustrating that the intervention of the Act did not change the Fifth Circuit's rule, the Court repeated that the term "member of

---

**6.** Appellate decisions outside the Fifth Circuit which state that Jones Act seaman status and "member of a crew" status under the Act are equivalent have involved plaintiffs who were longshoremen or ship construction personnel. Thus these courts were not faced with the issue of a worker such as a harbor pilot who by the nature of his work is not covered by the Act and

can virtually never achieve Jones Act status. *See, e.g., Duncanson–Harrelson Co. v. Director OWCP,* 686 F.2d 1336 (9th Cir.), *vacated on other grounds,* 462 U.S. 1101, 103 S.Ct. 2446, 77 L.Ed.2d 1329 (1982) (plaintiff was a pile driver); *Travelers Ins. Co. v. Belair,* 412 F.2d 297, 302 (1st Cir.1969) (plaintiff was a carpenter).

the crew" excludes Jones Act seamen from Act coverage, and further stated that "seamen" do not include land-based workers such as are covered by the Act. 111 S.Ct. at 813–14. The Court's "landbased" and "sea-based" language is used solely in the context of distinguishing LHWCA workers from Jones Act seamen.

In fact, the Court recognized that the term "seaman," under general maritime law as well as under the Jones Act, is a broad term encompassing *all* who are in service of the vessel. The Court reiterated that the long-established definition of a mariner, or seaman, includes "all persons employed on board ships and vessels *during the voyage to assist in their navigation and preservation,* or to promote the purposes of the voyage." 111 S.Ct. at 812 (citing E. Benedict, *The American Admiralty* § 278, at 158 (1850) (emphasis added)). Nothing in the Court's opinion prevents the conclusion that harbor pilots, who are land-based but perform navigational duties and serve under working conditions dictated solely by a vessel, may be "members of the crew" even if they do not qualify as Jones Act seamen.

Nor does a harbor pilot qualify for coverage under the Act by virtue of engaging in "maritime employment." When the full text of Section 902(3) is read together with the exclusion in Subsection (G) for crewmen performing navigational duties, it is apparent that the "maritime employment"

requirement is an occupational test that focusses on longshoring and ship maintenance operations, and not on activities associated with navigation. *See Coloma v. Director, OWCP,* 897 F.2d 394 (9th Cir.1990), citing *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 423–24, 105 S.Ct. 1421, 1427–28, 84 L.Ed.2d 406 (1985) (while "maritime employment" is not limited to the occupations specifically mentioned in Section 902(3), "neither can it be read to eliminate any requirement of a connection with the loading or construction of ships.").

In *Herb's Welding,* the Supreme Court rejected the Fifth Circuit test which defined "maritime employment" as employment having a significant relationship to traditional maritime activity. *Id.* at 423, 414, 105 S.Ct. at 1427, 1427. The Court emphasized that Congress's most important concern in enacting the 1972 amendments was

> ... the desire to extend coverage to longshoremen, harborworkers, and others who were injured while on piers, docks, and other areas customarily used to load and unload ships or to repair or build ships, rather than while actually afloat.

470 U.S. at 419–20, 105 S.Ct. at 1425–26; H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4708; S.Rep. No. 92–1125, 92d Cong., 2d Sess., at 13 (1972). *Accord Director, OWCP v. Perini North River Associates,* 459 U.S. 297, 316–17, 103 S.Ct. 634, 646–47, 74 L.Ed.2d 465 (1983).[7] *See*

---

**7.** The majority cites *Perini* in support of its theory that the Supreme Court considered and rejected the argument that "maritime employment" does not include pilotage. What the Court actually considered and rejected, however, was the assumption, made by the Second Circuit, that "maritime employment" must necessarily involve a significant relationship to navigation or to commerce on navigable waters. Nowhere in *Perini* did the Court mention pilotage, or link any navigation-related activity to the "maritime employment" category.

*Perini* holds that the Act *does not require the employee to show* that his employment possesses "a significant relationship to navigation or to commerce" in order to obtain coverage, where the employee is injured while working upon the actual navigable waters in the course of his employment *and* would have been covered under the pre–1972 Act. At the time of injury, the worker in *Perini* was on the deck of a cargo

barge directing the unloading of sewage pipes that were to be used in constructing the foundation of a sewage treatment plant. The Second Circuit held that the worker was not involved in "maritime employment" because the sewage treatment facility was not ultimately to be used in navigation or in commerce upon navigable waters. The Supreme Court reversed, holding that a *marine construction worker* who was covered under the pre–1972 Act will not lose coverage after 1972 just because he was injured while working on a task that did not involve navigation or commerce. 459 U.S. at 323–24, 103 S.Ct. at 650–51.

*Perini* reinforces what the legislative history of the amended Act and Section 902(3) makes clear: "maritime employment" involves traditional longshoring and construction activities. Even if *Perini* held as the majority claims, the holding would be questionable in the light of the later *Herb's Welding.*

*also Clark v. Solomon, supra* (cited by the Ninth Circuit in *Coloma, supra,* 897 F.2d at 399, for having correctly applied the *Herb's Welding* test in its analysis of harbor pilot coverage under the Act).

The statutory language, legislative history, and interpreting case law combine to indicate that maritime employees who are engaged in navigation, and not as longshoremen or construction workers, are not among the group of workers Congress intended to reach in extending the Act's coverage. In particular, harbor pilots such as Harwood, whose sole work is navigation, have no cause of action under the Act and must find their remedies elsewhere.

## II.

The general maritime law warranty of seaworthiness covers maritime workers who, like Harwood, have no remedy for employmentrelated injury under either the Act or the Jones Act. The duty of seaworthiness, which was imposed as early as 1903 with *The Osceola,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, obligates a vessel owner "to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer,* 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). Seamen crew members are the beneficiaries of the warranty of seaworthiness and may recover for injuries sustained because of the unseaworthy condition of their vessel. The duty imposes a standard of strict liability, completely divorced from concepts of negligence. *Id.,* 362 U.S. at 540, 80 S.Ct. at 927.

The warranty of seaworthiness is separate and independent of statutory and other general maritime remedies, such as maintenance and cure. *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 516, 27 L.Ed.2d 562 (1971). The scope of the class of persons to whom the warranty of seaworthiness is owed was

greatly expanded in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). *Sieracki* extended the warranty to longshoremen who were not directly employed by the ship on which the injury occurred.[8] In subsequent rulings, the Supreme Court reaffirmed the *Sieracki* principle that the warranty of seaworthiness should extend to that group of workers who needed the doctrine's protection because they were subjected to the same dangers as those seamen crew members directly employed by the vessel. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 413, 74 S.Ct. 202, 207, 98 L.Ed. 143 (1953); *Kermarac v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

The majority claims that Congress overruled *Sieracki* by means of the 1972 amendments to the Act, so that the *Sieracki* cause of action for warranty of seaworthiness no longer exists. On the contrary, the legislative history and case law cited by the majority affirm that, for workers such as Harwood who are excluded from the coverage of the Act, *Sieracki* remains very much alive.

It is undeniable that, in the processing of amending the Act, Congress abolished the *Sieracki* action for unseaworthiness for all maritime employees who come within the coverage of the Act. The House Report states:

> *Persons to whom compensation is payable under the* Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness.

H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4703 (emphasis added). The Committee went on to say that

---

**8.** *Sieracki* held that the availability of the unseaworthiness remedy did not depend on the existence of a contractual relationship between the plaintiff and shipowner. The duty stemmed rather from the fact that the shipowner had agreed to the plaintiff's performance of service on his ship. *Sieracki, supra,* 328 U.S. at 96, 66

S.Ct. at 878. The Court's opinion was based on the fact that the seaworthiness remedy historically was derived from "the hazards which maritime service places upon men who perform it, rather than any consensual basis of responsibility." *Id.* at 94, 66 S.Ct. at 877.

[t]he rationale which justifies holding the vessel absolutely liable to seamen if the vessel is unseaworthy does not apply with equal force to *longshoremen and other non-seamen* working on board a vessel *while it is in port.*

*Id.* (emphasis added). The Committee's purpose was to eliminate the end-run around the Act's limit on employer liability that was occurring as a result of the combination of *Sieracki* and *Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). *Ryan* subjected the employer of a longshoreman injured aboard a ship to liability for damages incurred by the ship when the worker sued the ship under *Sieracki,* by allowing the ship to recover those damages from the employer. 1972 U.S.Code Cong. & Admin.News at 4702. Employers were thus, contrary to the intention of the 1927 Act, exposed to no-fault liability. By making the *Sieracki* action unavailable to the longshoremen and other non-seamen covered by the Act, Congress restored the effectiveness of the Act's limitation of employer liability to a negligence standard.

Nowhere in the legislative history does the Committee state that its intention was to overrule *Sieracki* absolutely, or to deny the warranty of seaworthiness to any but employees covered by the Act. Despite the majority's assertion, neither has this court held that Congress overruled *Sieracki* for employees not covered by the Act. In fact, in *Whittington, supra,* we acknowledged that *Sieracki* still provides the warranty of seaworthiness. 541 F.2d at 433. *See also Stephenson, supra,* 863 F.2d at 340. Our decision in *United States Lines, Inc. v. United States,* 593 F.2d 570 (4th Cir.1979) says nothing more than that the 1972 Amendments overruled *Sieracki—with respect to employees covered by the Act.* 593 F.2d at 572; [9] *accord Drake v. Raymark Industries, Inc.,* 772 F.2d 1007, 1013 (1st Cir.1985), *cert. denied sub nom. Ray-*

*mark Industries v. Bath Iron Works Corp.,* 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); *Aparicio v. Swan Lake,* 643 F.2d 1109 (5th Cir. Unit A 1981) (holding that 1972 Amendments had no effect on persons not covered by the Act).

The fact that Harwood is a compulsory pilot does not interfere with his coverage under *Sieracki. Sieracki* holds that the contractual (*i.e.,* consensual) relationship between the worker and the master is not the basis of the liability for seaworthiness. 328 U.S. at 96, 66 S.Ct. at 878. The liability arises, not as an incident merely of the seaman's contract, but of performing the ship's service—doing a seaman's work and incurring a seaman's hazards—with the owner's consent or by his arrangement. *Id.* at 95, 99, 66 S.Ct. at 877, 879.

Moreover, under Virginia's statutory scheme, the ship's master actually does have the power to consent to the service rendered by a particular pilot. Va.Code Ann. §§ 54.1–900–54.1–927 (Rep. vol. 1988 & Supp.1990). Licensed Virginia pilots testified at trial that the master retains command of the vessel and may reject a particular pilot. The Virginia statutory system may in effect compel the use of a pilot licensed by the Commonwealth, but ultimately the master must consent to the manner in which the particular pilot conducts his services.

In amending the 1927 Act, Congress can hardly have intended to deprive harbor pilots, who perform not longshoreman work but traditional seaman's duties, and who in most cases are not eligible for Jones Act protection, of their only remaining maritime remedy. The majority, by reading the amended Act and its legislative history far more broadly than the text itself supports, appears determined to accomplish this exclusion in spite of Congress's failure to do so.

Because the district court's instruction to the jury on strict liability under the war-

---

**9.** In *United States Lines* we did not have to consider *Sieracki* because the plaintiff was covered under the Federal Employees' Compensation Act. The 1972 Amendments' only effect in this case was to cut off the indemnity action between the shipowner and the employer Unit-

ed States Government. *United States Lines, supra,* 593 F.2d at 572. Until the present appeal, we have not directly confronted the issue of whether seamen not covered under the Act or the Jones Act retain their *Sieracki* cause of action.

ranty of seaworthiness represented a correct statement of the law, and because the jury's finding that the shipowner was liable under that standard was supported by evidence from which a reasonable jury could have drawn this conclusion, the jury's verdict should be upheld and the district court's actions affirmed.